IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA B.[1],                                                    Case No. 3:25-cv-00709-JR

        Plaintiff,                                          OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

RUSSO, Magistrate Judge:

Plaintiff Joshua B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Born in 1979, plaintiff alleges disability beginning April 2, 2014, due to obsessive compulsive disorder ("OCD"), depression, and a social communication disorder. Tr. 353-54, 414, 427. His claim was denied initially and upon reconsideration. [2] Plaintiff filed a complaint in this Court on January 19, 2023, and as a result, this Court issued an order remanding the matter back the agency for further proceedings. Tr. 844-61. The Court found the ALJ erred in her evaluation of four medical opinions, including those of Robert Weniger, PsyD, and Luke Patrick, M.D., as well as the lay witness statement provided by plaintiff's father, Eliot B. Tr. 860. Subsequently, the Appeals Council issued an order remanding the matter to the ALJ for a new hearing on April 24, 2023. Tr. 862-66. On October 3, 2023, a sixth supplemental hearing was held before the ALJ, wherein plaintiff was represented by counsel, but did not testify, as the focus of this hearing was on vocational expert ("VE") testimony. Tr. 796-807. On February 26, 2024, the ALJ issued a second decision, again finding plaintiff not disabled. Tr. 763-93. The Appeals Council declined to assume jurisdiction over the matter, making the ALJ's February 2024 decision the final order of the agency.  Plaintiff then filed a second complaint in this Court. Tr. 744-50.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had engaged in substantial gainful activity from August 2014 to November 2014, but that there was a twelve-month period where plaintiff did not engage in substantial gainful activity. Tr. 769-70. At step two, the ALJ determined the following impairments were medically determinable and severe: "OCD; social communication disorder; possible generalized anxiety disorder." Tr. 770. At step

---

[2] Plaintiff previously applied for Disability Insurance Benefits, which was denied by the Administrative Law Judge ("ALJ") on April 22, 2020. Tr. 10-33.

three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 771.

Because he did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels except:

> [He] has sufficient concentration, persistence, and pace to complete simple, routine tasks; should have no required interactions with the general public and only occasional, brief contact with coworkers; should work independently and not as part of a team; can tolerate supervision delivered in a clear and direct manner; should be in a workplace with few and predictable changes in the work setting and work routine.

Tr. 772.

At step four, the ALJ determined plaintiff was unable to perform his past relevant work as a teacher aid, inventory clerk, or daycare worker. Tr. 783. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as hospital housekeeper, routing clerk, and auto lot attendant. Tr. 784.

### DISCUSSION

Plaintiff argues the ALJ erred by (1) giving the medical opinion of Dr. Weniger "little weight" and the medical opinion of Dr. Patrick "significant weight"; (2) rejecting the lay witness testimony of his father, Eliot B.; and (3) posing an incomplete hypothetical to the VE. Pl.'s Opening Br. 5-15 (doc. 9).

**(1)    *Robert Weniger, PsyD.*** Dr. Weniger, a clinical neuropsychologist, conducted a psychological evaluation of plaintiff on December 7, 2016. Tr. 604-13. In his 2016 opinion, Dr. Weniger diagnosed plaintiff with OCD, generalized anxiety disorder, and social (pragmatic)

Page 3 – OPINION AND ORDER

communication disorder with obsessive-compulsive personality features. Tr. 611. Dr. Weniger described plaintiff's familial, interpersonal, educational, and employment history in particular specificity. He first highlighted plaintiff's self-reports that "his childhood household environment [w]as stable and supportive" and he "characterized himself as reasonably social." Tr. 606. Plaintiff acknowledged his "occasional apprehension in novel social situations and unfamiliar social environments" and is "easily overwhelmed by excessive social stimulation." *Id*. He likewise perceived that he "is able to experience and express a broad range of emotions, including compassion and empathy." *Id*. Plaintiff indicated he excelled academically and received several awards, but later "struggled to efficiently comprehend complex academic concepts[.]" Tr. 607. Regardless, plaintiff attended Brigham Young University and maintained a 3.8 grade point average, subsequently transferred to Portland State University and graduated with a bachelor's degree and a 3.8 grade-point average. *Id*.

Dr. Weniger discussed plaintiff's "sporadic employment history[,]" though one of his jobs lasted four years. *Id*. Dr. Weniger noted plaintiff's own perception that he "performed well in that capacity and 'very much enjoyed it.' He was frequently asked to train new employees." *Id*. Dr. Weniger then highlighted plaintiff's struggle to "procure and sustain employment[,]" but that plaintiff "considers himself to be a reliable, dependable, and conscientious employee." *Id*. Dr. Weniger noted that plaintiff "struggles to perform tasks in an efficient manner due to excessive attention to detail and insecurity regarding the accuracy of task performances. Plaintiff acknowledged difficulty coping with workplace stress, most notably "fast paced activity, high-pressure demands, and unanticipated deviations from routine." *Id*. On exam, Dr. Weniger observed that plaintiff "arrived on-time for the evaluation appointment. He called the examiner several days prior to the evaluation to confirm. He additionally visited the office in which the evaluation was

Page 4 – OPINION AND ORDER

scheduled to ensure the accurate address. He was alert and fully oriented. He was casually dressed, with adequate grooming and hygiene." Tr. 608. Dr. Weniger observed that plaintiff "gave the impression of being logical and analytical" that his "speech was coherent and reasonably fluent, though with flat intonation and a pressured quality." Tr. 609. Though his "expressive language was characterized by adequate articulation and impressive vocabulary usage[,]" his "responses to questions were excessively verbose, with superfluous content, excessive detail, and a rambling quality." *Id*. Dr. Weniger noted that plaintiff "was extremely difficult to redirect" and did not "appreciate social cues communicated by the examiner." *Id*. Dr. Weniger's test results indicated that plaintiff's clinical personality pattern scales were notable for obsessive-compulsive personality features, including that he "seems to be preoccupied with orderliness, structure, and control, likely at the expense of flexibility and efficiency. His excessive attention to detail and repeated checking of his work may interfere with task completion." *Id*. Other exam results indicated mild depression and anxiety symptoms. Tr. 609-610. In conclusion, Dr. Weniger indicated that plaintiff "exhibited limited insight regarding the manner in which his social interactions are experienced by others. He may consequently struggle to modulate his behavior in response to feedback from his environment." Tr. 611. Dr. Weniger lastly indicated that plaintiff's strengths are that he "appeared to be an intelligent individual. He gave the impression of being logical and analytical. He was respectful in his interactions with the examiner. He expressed a desire to improve his circumstances. He seemed to possess a solid work ethic." *Id*.

The ALJ gave Dr. Weniger's opinion "little weight." Tr. 779. As opposed to the ALJ's first decision, where the ALJ erroneously gave Dr. Weniger's opinion "some weight" because it did not contain a function-by-function analysis, the ALJ has since corrected this error in her second decision. *See* Tr. 854. In her second decision, the ALJ provided an explanation supported by

Page 5 – OPINION AND ORDER

substantial evidence as to why Dr. Weniger's opinion "overestimate[d] [plaintiff's] need for support at work, social interaction, and handling tasks[.]" Tr. 779.

Because plaintiff filed his application for benefits on February 28, 2017, the prior medical rules apply. Tr. 766; *see* 20 C.F.R. § 404.1527(c)(2) (2020) ("For claims filed before March 27, 2017, the rules in this section apply.") Under the old rules, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

Page 6 – OPINION AND ORDER

1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), as amended (Oct. 23, 1995).

The ALJ offered specific and legitimate reasons for giving Dr. Weniger's opinion little weight. First, the ALJ acknowledged that Dr. Weniger was an examining physician. Tr. 778-79. Second, the found that Dr. Weniger's opinion conflicted with the "complete record" and was "limited" in support. Tr. 779. In turn, the ALJ gave greater weight to the opinions of Drs. Patrick and Cohen. *See id*. Plaintiff argues that the "ALJ has improperly taken [many] findings out of context[.]" Pl.'s Br. at 8. But plaintiff's main argument boils down to a disagreement with the ALJ's interpretation of the evidence. And although the ALJ has the responsibility to resolve conflicts in the medical evidence, the ALJ's interpretation of the record is reasonable here and should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Solomon v. Colvin*, No. CV 13-05121-JEM, 2014 WL 741548, at *7 (C.D. Cal. Feb. 25, 2014).

When reading the entire ALJ decision, rather than specifically assaulting—or cherry picking—the section regarding Dr. Weniger's opinion, it is apparent that plaintiff's objection is unsupported. The ALJ explained that Dr. Weniger's overestimation of plaintiff's need for support at work, social interaction, and handling tasks was inconsistent with other parts of the record demonstrating plaintiff's ability to handle his activities of daily living, often having a "normal" affect, maintaining eye contact, and displaying normal speech, cooperation, alertness, orientation, and memory. Tr. 779. The ALJ also found plaintiff was able to have logical thought processes, perform Serial Sevens, recall three of three items after a delay, and often displayed normal judgment. *Id*. The ALJ also found that Dr. Weniger's own exam findings showed plaintiff's ability

Page 7 – OPINION AND ORDER

to put in extra effort to ensure timeliness to his examination, was cooperative and alert during examination, displayed linear and organized thinking, had adequate information recall, all of which do "not support a need for single activities at a time, assistance adapting to changes, or a structured, supportive workplace." *Id*. The Court agrees, as the record reflects plaintiff's effort to ensure he was on time and in the right place for his examination, which included multi-step preparation and planning. *See* Tr. 608. The citations the ALJ provided to support her findings also indicate that plaintiff's limitations are not as severe as Dr. Weniger opined, and that plaintiff is motivated to improve his symptoms. *See* Tr. 1160 "[Plaintiff]'s presentation was generally within normal limits. He was cooperative during session and open about his experiences. . . [he] presented as insightful to his thoughts, emotions, and processes, as well as motivated for treatment regarding his OCD symptoms."; 726 (treatment note showing euthymic mood, clear speech, normal thought content and cognition, average intelligence, normal insight and judgment.); 1114 ("Eye contact appropriate and is cooperative during interview. No evidence or report of psychotic symptoms including hallucinations, delusions, paranoia. Sits calmly without shaking or psychomotor agitation. Thoughts logical and linear. Insight and judgment fair").

Lastly, the ALJ reasonably gave more weight to the opinion of independent medical expert, Dr. Cohen, than to Dr. Weniger's opinion, which plaintiff does not contest. *See* Tr. 781 "Dr. Cohen was able to review the file and provide [an] explanation for his opinion. His opinion that [plaintiff] has a mild paragraph B limitation in understanding, remembering, or applying information and interacting with others, with an ability to do simple tasks is generally consistent with the record, including [plaintiff]'s anxious affect."; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

Page 8 – OPINION AND ORDER

Ultimately, the ALJ utilized adequate reasons, recognized by the Ninth Circuit, to give Dr. Weniger's opinion little weight. Those reasons may include reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995). Such is the case here, and the Court will not disturb the ALJ's findings.

**(2)** ***Luke Patrick, M.D.*** Dr. Patrick, a licensed psychologist, conducted a psychodiagnostic evaluation of plaintiff on February 5, 2018. Tr. 681. In his 2018 opinion, Dr. Patrick diagnosed plaintiff with social (pragmatic) communication disorder and OCD. Tr. 684. Dr. Patrick described plaintiff as having "difficulty describing feelings" and "being easily overwhelmed by excessive information 'like multiple open windows on a computer,' or being in crowds." Tr. 681. Dr. Patrick indicated that plaintiff performed well scholastically, has done some paid work, but has struggled to find and maintain work "apparently due to his social communication disorder which has made for a lack of flexibility and appropriate responsiveness in social situations." Tr. 682. Dr. Patrick then described plaintiff's daily activities, where he is "independent with regard to all basic self-care, tends to a variety of household and yard chores without prompting, has a driver's license and provides transportation both for himself and other family members. He prepares basic meals for himself as needed. Social interaction is mainly with his immediate family. He has some involvement with church activities as well." *Id*. On exam, Dr. Patrick observed that plaintiff's "speech was notable for a somewhat rigid cadence and sometimes tangential stream of thought" and that "he was cooperative and congenial, but interaction was somewhat awkward as a result of

Page 9 – OPINION AND ORDER

his communication style." Tr. 683. Dr. Patrick concluded that plaintiff "has good motivation for competitive work and has held various jobs in the past, though maintenance of these jobs has been difficult due to his combination of IBS and psychiatric symptoms. Most prominent among the latter have been the challenges with social interaction." *Id*. Dr. Patrick noted that though plaintiff was "very polite and congenial in his presentation, it did not take long to recognize the features of speech and conversation flow that are indicators of bis social challenges and limitations." *Id*. Dr. Patrick lastly indicated plaintiff is of "average intelligence" and expresses a "strong motivation for work[.]" *Id*.

The ALJ gave Dr. Patrick's opinion significant weight. Tr. 779. The ALJ stated that Dr. Patrick's opinion was somewhat vague but is well supported by his own examination of plaintiff that showed intact cognition but awkward social interaction and is "generally consistent with the complete record." *Id*. The ALJ cited plaintiff's anxious and restricted affect, inconsistent eye contact, difficulty with social cues, awkward social interactions, lack of insight, hyperverbal, tangential, pressured, and difficult to interrupt speech, concrete thinking, and fair judgment to support her findings. *Id*. The ALJ then balanced these observations against plaintiff's ability to regularly shop, handle his activities of daily living, and his often normal affect, eye contact, speech, cooperation, alertness and orientation, and memory, as well as plaintiff's logical thought process, ability to perform Serial Sevens, recall three of three items after a delay, and often normal judgment. *Id*. The ALJ then found Dr. Patrick's medical opinion to be somewhat vague regarding plaintiff's social limitations, but that the RFC accounts for those limitations. *Id*. The ALJ explained that if Dr. Patrick's opinion was read as more restrictive than the RFC, his examination and the record would not support such restrictions. Namely, plaintiff showed cooperation and good

Page 10 – OPINION AND ORDER

grooming on examination, and the record reflects that plaintiff could regularly shop and often had a normal affect, eye contact, and speech. Tr. 779-80.

Plaintiff argues that the "ALJ erred in failing to provide legally adequate reasons for failing to include [the social functioning limitations] of Dr. Patrick's opinion in the RFC finding." Pl.'s Opening Br. at 12 (doc. 9). Plaintiff argues this Court "specifically found that Dr. Patrick's opinion was not vague and described specific deficits in social functioning." *Id*. Not so. This Court's 2023 order specifically takes issue with the ALJ's original reasoning given in her first decision, which was that Dr. Patrick's opinion "lacks an adequate function-by-function analysis for the purposes of Social Security disability evaluation." Tr. 855, citing Tr. 27-28. In the ALJ's second decision, she corrected this analytical error and provided substantial evidence in support of her findings and adopted Dr. Patrick's opinion into the final RFC. Tr. 779. Plaintiff's argument that "Dr. Patrick's opinion clearly described marked impairment in maintaining appropriate social functioning[,]" and that the ALJ erred by not including it is unconvincing for two reasons. Pl.'s Opening Br. at 12 (doc. 9).

First, nowhere in Dr. Patrick's opinion does he indicate a "marked" impairment in maintaining social functioning. *See* Tr. 681-84. Second, when incorporating a credited medical opinion, the ALJ's findings need only be consistent with the opined limitations, not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). An ALJ is not required to conform each part of her RFC assessment with the opinion of a physician. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see also Foster v. Kijakazi*, No. 21-16271, 2022 WL 3230472, at *2 (9th Cir. Aug. 10, 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal

quotation marks, and alterations omitted). The ALJ provided a full explanation as to why a more stringent reading of Dr. Patrick's opinion would *not* be supported by the record or his own examination of plaintiff. The ALJ specifically highlighted Dr. Patrick's observation that plaintiff has "challenges with social interaction, with [an] appreciably impaired ability to participate in appropriate social interactions." Tr. 779. The ALJ stated this opinion was "well supported" by Dr. Patrick's examination of plaintiff where he experienced, first-hand, plaintiff's "awkward social interaction[.]" *Id.*, citing Tr. 683. Plaintiff asserts, but fails to show, how the ALJ purportedly failed to adequately account for plaintiff's social functioning limitations, as the RFC states he "should have no required interactions with the general public and only occasional, brief contact with coworkers; should work independently and not as part of a team; can tolerate supervision delivered in a clear and direct manner; should be in a workplace with few and predictable changes in the work setting and work routine." Tr. 772; *Turner*, 613 F.3d at 1223 (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician). Plaintiff's bare assertion does not suffice to demonstrate error.

The ALJ was directed only to give specific and legitimate reasons to discount any part of Dr. Patrick's opinion, which the ALJ did. *See Lester*, 81 F.3d at 830. As mentioned, those reasons may include reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *See Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. As discussed, the ALJ reasonably explained that if Dr. Patrick's opinion was to be read as more restrictive than the RFC, than neither his exam nor the record would support it. Tr. 779-

Page 12 – OPINION AND ORDER

80. In sum, plaintiff fails to demonstrate harmful error and again plainly disagrees with the ALJ's interpretation of the evidence. The ALJ's interpretation of the record is reasonable and should not be second-guessed. *Rollins*, 261 F.3d at 857; *Solomon*, 2014 WL 741548, at *7.

**(3)    *Lay Witness Testimony*.** Plaintiff's father, Eliot B., provided a third-party statement regarding plaintiff's mental health-related limitations that tracked plaintiff's own allegations. *See* Tr. 449-56. The ALJ stated "[n]o weight is given to the third[-]party statement of [plaintiff]'s father . . . [Eliot B.] made similar reports as [plaintiff], describing [an] inability to multitask, perform difficult tasks, and a need for highly structured work environments with supervised simple tasks." Tr. 782. The ALJ further found that Eliot B.'s statement is internally inconsistent, "describing great difficulty with even simple tasks, but then intact ability to handle activities of daily living including cooking, driving, and shopping." *Id*. The ALJ also found that the degree of limitation plaintiff's father described was inconsistent with the record as whole and cited several objective medical observations of plaintiff. *See id*. Plaintiff asserts that this Court's 2023 Order previously found the lay witness statement to be consistent with the record, making the ALJ's current rejection a violation of that Order. Pl.'s Opening Br. at 14 (doc. 9), citing Tr. 859. The Court disagrees.

This Court's 2023 Order did not constitute a wholesale, permanent adoption of Eliot B.'s lay witness testimony. Rather, this Court took issue with the fact that in the ALJ's first decision, she rejected the lay witness testimony based on an improper rationale—specifically, the witness's familial relationship to plaintiff and a finding that his statement was otherwise "consistent" with the record (specifically referring to the medical opinions of Drs. Weniger, Patrick, O'Neill, and Bloom). *See* Tr. 858-59. The ALJ has since corrected both errors in her second decision by providing specific, germane reasons to discount the testimony.

First, the ALJ properly found that Eliot B.'s statement was internally inconsistent. *See* Tr. 782. He described plaintiff having "great difficulty with even simple tasks," yet simultaneously detailed an "intact ability to handle activities of daily living including cooking, driving, and shopping." Tr. 449-50. Internal inconsistency is a germane reason to discount lay witness testimony, and these findings are supported by substantial evidence in the record. *See* Tr. 428, 430, 681-82.

Second, the ALJ pointed to specific instances in the objective medical record that directly contradict the severe limitations described by Eliot B. *See* Tr. 782. Plaintiff contends that his father's testimony is consistent with the opinions of Drs. Weniger and Patrick. Pl.'s Opening Br. at 14 (doc. 9). However, this Court has previously evaluated the medical opinions of Drs. Weniger and Patrick, and as previously discussed, the ALJ provided substantial evidence to reject the extreme limitations from those medical sources. Because the ALJ properly resolved the conflicts in the underlying medical evidence, any similarities Eliot B.'s statement has with those same rejected opinions does not establish error.

Finally, the ALJ's evaluation of Eliot B.'s testimony constitutes harmless error. Lay witness testimony can be discounted if it does not describe any limitations beyond those already alleged by the claimant, provided the claimant's own testimony was properly evaluated. Where a lay witness's testimony mirrors the claimant's subjective reports, "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Here, the statements from Eliot B. closely track plaintiff's own self-reports. *Compare* Tr. 427 *with* Tr. 449-56. Plaintiff does not contest the ALJ's findings regarding his own subjective symptom testimony, meaning the ALJ's clear and convincing reasons for discounting plaintiff's reports stand unchallenged. *See* Tr. 773-76. Because

Page 14 – OPINION AND ORDER

Eliot B.'s statements mirrored plaintiff's properly discredited allegations, those same clear and convincing reasons apply equally to the father's testimony under *Molina*. Accordingly, the ALJ provided specific, germane reasons supported by substantial evidence to discount the lay witness testimony. Plaintiff's arguments to the contrary are without merit.

**(4)    *Hypothetical Questions to VE.*** Lastly, plaintiff argues that the ALJ's vocational hypothetical was invalid because "in posing the hypothetical questions to the [VE], the ALJ omitted [p]laintiff's credible allegations and those of the lay witness. The ALJ also omitted the limitations assessed by [p]laintiff's treating and examining providers[.]" Pl.'s Opening Br. at 14-15. Therefore, the ALJ "fail[ed] to accurately pose all of [p]laintiff's limitations, [and] the VE's testimony that [p]laintiff can perform those occupations has no evidentiary value. " *Id*. at 15.

The Court notes that plaintiff only challenges the hypothetical questions posed to the VE and does not argue against his actual RFC evaluation. The ALJ, however, can only "propose a hypothetical [to the VE] that is based on medical assumptions supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)). Here, because plaintiff does not directly challenge his RFC, the Court presumes he concedes it was based on substantial evidence. Moreover, the dispositive hypothetical question that the ALJ posed to the VE accurately incorporated all of the limitations set forth in plaintiff's RFC. *See* Tr. 800-07. As such, plaintiff is unable to demonstrate that the RFC and hypothetical questions to the VE were incomplete or invalid. *See Stubbs-Danielson*, 539 F.3d at 1173-76; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (ALJ could rely on VE's testimony, even though hypothetical presented to VE did not include all of claimant's alleged limitations, where hypothetical contained all limitations that ALJ found credible and supported by substantial evidence).

Page 15 – OPINION AND ORDER

**CONCLUSION**

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 18th day of June, 2026.

/s/ Jolie A. Russo

Jolie A. Russo
United States Magistrate Judge

Page 16 – OPINION AND ORDER